**POOR et al. v. WHITE, Collector.**

**No. 5625.**

District Court, D. Massachusetts.

Aug. 7, 1934.

Hutchins & Wheeler, Harry LeBaron Sampson, and Edwin A. Howes, all of Boston, Mass., for plaintiffs.

Francis J. W. Ford, U. S. Atty., and J. Duke Smith, Sp. Asst. to U. S. Atty., both of Boston, Mass., for defendant.

BREWSTER, District Judge.

This action is brought to recover an alleged overassessment and overpayment of an estate tax assessed upon the transfer of the net estate of Adelaide J. Sargent, deceased. The controversy arises over the act of the Commissioner of Internal Revenue in including in the gross estate the value of certain property conveyed to trustees by the decedent. The case was heard upon an agreed statement of facts and evidence presented at the trial.

I find the facts to be as stipulated, and I further find from the evidence that the transfer was not made by the decedent in contemplation of death.

The pertinent facts may be stated as follows:

In 1907, the decedent conveyed certain property in trust, for the benefit of herself and her children. This trust was revoked in 1911, and another trust created which was also revoked in 1919. In both of the trust instruments the power of revocation was expressly reserved to the settlor. To take the place of the trust created in 1911, the decedent, on December 31, 1919, created the trust involved in the present suit. The purpose of this last trust was to more definitely fix the shares of the beneficiaries, to join as trustee a disinterested person with no beneficial interest, and to eliminate any reserved power of revocation so that the income would not be wholly taxed to the settlor.

The decedent, her son, Arthur H. Sargent, and Harry LeBaron Sampson were the trustees who joined in the declaration of trust, dated December 31, 1919, and on that date the decedent transferred to the trustees the real and personal property, the value of which the Commissioner included in the gross estate for the purpose of computing the estate tax.

At the time of this conveyance, Mrs. Sargent was 83 years old, in good health, and showed remarkable vigor of mind and body for one of her age. In 1920, she traveled abroad, and it was not until 1931 that she died, and this as a result of a fall. The evidence does not warrant a finding that when, in 1919, she conveyed the property in trust, she was transferring it in contemplation of death. She was merely carrying forward a plan which originated in 1907, without any thought or consciousness of impending death or of effecting a testamentary disposition of her property. The fact that upon the final distribution the property would go to her descendants after the death of the survivor of the beneficiaries is not enough to justify a finding that the transfer was made in contemplation of death, within the meaning of the statute imposing estate taxes.

By the terms of the trust, the trustees were to pay one-half of the net income to the decedent during her lifetime and the other one-half to her three children until her death; then all of the income was to go to the children. Upon the death of the last survivor of the decedent and the three children who were the beneficiaries, the trust was to terminate, and the trust res was to be distributed according to the terms of the trust agreement.

The declaration of trust contained no provision by which the settlor reserved any right to alter, amend, or revoke the trust, either alone or in conjunction with any other person. The instrument did contain,

however, the following provision for terminating the trust: "Eighth. This trust may be terminated at any time either as to the whole or as to any part of the property held in trust hereunder, by the person or persons who shall then be trustees hereunder, such termination to be evidenced by a written declaration signed, sealed and acknowledged by them and duly recorded, * * * setting forth specifically the property as to which such termination is to take effect, and in that event the trusts declared hereunder shall as to such property be at an end and such property shall be paid over and conveyed, free and discharged of all trusts, to the said Adelaide J. Sargent, if she be then living, and if she be not then living one share shall be paid over and conveyed to each of her children who shall then be living. * * *" Then follow provisions for the payment of the shares to any child who was not then living.

There was a provision in the instrument that, in case of absence from the United States of any trustee thereunder, the other two trustees could exercise all the powers of the trustees and perform their duties. It appeared in the evidence that this provision was inserted because one of the trustees, Arthur H. Sargent, resided a considerable portion of his time in Paris, although at the time of the decedent's death, and for some substantial period prior thereto, he was in this country.

The trust also provided for the filling of vacancies by the remaining trustees, if any one of the trustees should die or resign.

In 1920, Mrs. Sargent resigned as trustee, and her daughter, Mary Adelaide Poor, was appointed by the remaining trustees to fill the vacancy. Mrs. Poor held office until November 9, 1921, when she resigned, and the decedent was duly appointed by the remaining trustees to fill the vacancy. The deceased continued to be one of the trustees until the time of her death on January 22, 1931. The other trustees, Arthur H. Sargent and Harry LeBaron Sampson, continued as trustees throughout the whole period, from the beginning of the trust until the death of Mrs. Sargent.

Parties are agreed as to the value of the property transferred by trust. It is contended that the value was properly included in the gross estate of the decedent because it fell within section 302 (c) of the Revenue Act of 1926 (26 USCA § 1094 (c). This section authorized the inclusion in the gross estate of a decedent of the value, at the time of his death, of property, "to the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth."

■ I have found as a fact, and I now rule as a matter of law, that the transfer by trust was not made in contemplation of death. United States v. Wells et al., Ex'rs, 283 U. S. 102, 51 S. Ct. 446, 75 L. Ed. 867. Nor can it be ruled that the transfer was one to take effect in possession or enjoyment at or after the decedent's death, in view of Reinecke, Coll. v. Northern Trust Co., 278 U. S. 339, 49 S. Ct. 123, 73 L. Ed. 410, 66 A. L. R. 397; May v. Heiner, Coll., 281 U. S. 238, 50 S. Ct. 286, 74 L. Ed. 826, 67 A. L. R. 1244; Burnet, Com'r v. Northern Trust Co , 283 U. S. 782, 51 S. Ct. 342, 75 L. Ed. 1412; Morsman, Adm'r v. Burnet, Com'r, 283 U. S. 783, 51 S. Ct. 343, 75 L. Ed. 1412; McCormick et al., Ex'rs v. Burnet, Com'r, 283 U. S. 784, 51 S. Ct. 343, 75 L. Ed. 1413.

The reservation of a portion of the income to herself during her lifetime does not prevent the transfer from being a completed transfer and beyond the reach of the statute. May v. Heiner, Coll., supra; McCormick et al., Ex'rs v. Burnet, Com'r, supra; Morsman, Adm'r v. Burnet, Com'r, supra; Burnet, Com'r v. Northern Trust Co., supra.

In McCormick et al., Ex'rs v. Burnet, Com'r, supra, the trust contained provisions whereby the settlor could terminate the trust with the consent of one or more of the beneficiaries. This reservation was held to be insufficient to bring the transfer within the statute, and to the same effect was Reinecke, Coll. v. Northern Trust Co., supra.

■ The controlling question here is whether the transfer comes within the reach of 302 (d) of the Revenue Act of 1926 (26 US CA § 1094 (d), which required that the value of the gross estate of a decedent should be determined by including the value, at the time of his death, of property "(d) to the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, or where the decedent re-

linquished any such power in contemplation of his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth. * * * "

The 1926 statute expressly provided that transfers that came within subdivision (d) should apply to transfers, trusts, etc., whether made, created, arising, existing, exercised, or relinquished before or after the enactment of this act.

If it should be held that the transfer by the decedent by trust came within the definition of 302 (d), then the further question remains whether this statute, operating upon a transfer fully completed prior to the enactment of the statute, can be upheld as a constitutional enactment.

It is the defendant's contention, as I understand it, that the provisions of the trust indenture whereby the trustees could, at any time, terminate it, rendered the enjoyment thereof subject to change through the exercise of a power by decedent in conjunction with another to revoke the trust. This contention, in my opinion, is not sound. Whatever powers the trustees enjoyed to terminate the trust could be exercised as well after as before the death of the decedent. No power conferred upon the trustees ended upon the event of death, nor did the event bring into being, or ripen, any right or interest in survivors. There was no power of control, or power of revocation, reserved to the donor. In this respect the case is readily distinguished from Porter v. Commissioner, 288 U. S. 436, 53 S. Ct. 451, 454, 77 L. Ed. 880, where the trust indenture contained a reservation subject to specific limitations which left the settlor "dominant in respect of other dispositions of both corpus and income." The court further observed: "His death terminated that control, ended the possibility of any change by him, and was, in respect of title to the property in question, the source of valuable assurance passing from the dead to the living. That is the event on which Congress based the inclusion of property so transferred in the gross estate as a step in the calculation to ascertain the amount of what in section 301 (26 USCA §§ 1092, 1093) is called the net estate."

The fact that at the time of her death she was one of the trustees does not affect the legal results. She held office by virtue of an appointment by the other trustees, and not by virtue of any reservation in the trust deed. But, if she had never resigned, the transfer by her would have been none the less complete because she was one of the original trustees. Reinecke v. Northern Trust Co., supra.

I do not find that Reinecke v. Smith, 289 U. S. 172, 53 S. Ct. 570, 77 L. Ed. 1109, cited by the defendant, lends support to his contention. In that case the indenture provided that it could be modified at any time by the donor and one of the trustees. The donor (not a beneficiary), his son (a beneficiary), and a bank, with trust powers, were the trustees. The case arose under the income tax provisions of section 219 (g) of the Revenue Act of 1924 (43 Stat. 253, 275, 26 USCA § 960 note). The court held that the income was taxable. I see nothing in that decision inconsistent with Reinecke v. Northern Trust Co., supra, or McCormick v. Burnet, supra, which held that, where revocation was dependent upon joint action of grantor and the beneficiary, the transfer was effective when made and not at death. This is evident from the language of the opinion to the effect that the same considerations as to ownership and control affect the power to impose a tax on the transfer of the corpus and upon the income.

If it were necessary to hold the transfer in question as one within 302 (d), I am unable to see how one can escape the conclusion that the statute, when applied to a transfer wholly completed before the enactment of the law, would be beyond the powers of Congress. Nichols v. Coolidge, 274 U. S. 531, 47 S. Ct. 710, 71 L. Ed. 1184, 52 A. L. R. 1081; Reinecke v. Northern Trust Co., supra. See, also, Untermyer v. Anderson, 276 U. S. 440, 48 S. Ct. 353, 72 L. Ed. 645; Blodgett v. Holden, 275 U. S. 142, 276 U. S. 594, 48 S. Ct. 105, 72 L. Ed. 206.

■ In reaching my conclusion that the transfer here involved does not come within the sweep of 302 (d), I am following Reinecke v. Northern Trust Co., supra, in resolving doubts in favor of the taxpayer and adopting that construction which upholds the act.

It follows that the Commissioner improperly included in the decedent's gross estate the value of the property transferred in 1919 to trustees, and that plaintiff, therefore, is entitled to recover the deficiency tax of $2,533.46 unlawfully exacted, together with interest thereon.