T.C. Memo. 2010-202

UNITED STATES TAX COURT

MCGEHEE FAMILY CLINIC, P.A., Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

ROBERT L. PROSSER III & MARY C. PROSSER, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 15646-08, 15647-08.    Filed September 15, 2010.

Ira B. Stechel, for petitioners.

Brian E. Derdowski, Jr. and Brian J. Bilheimer, for
respondent.

MEMORANDUM OPINION

COHEN, Judge:  These consolidated cases are before the Court
on petitions for redetermination of two statutory notices of
deficiency.  With respect to McGehee Family Clinic, P.A.,

respondent determined a deficiency in Federal income tax for the tax year ended March 31, 2005, of $16,042 and a penalty under section 6662A of $4,812.47. With respect to Robert and Mary Prosser, respondent determined a deficiency in Federal income tax for 2004 of $17,500 and a penalty under section 6662A of $3,500. The principal issue in these cases is whether amounts paid by McGehee Family Clinic in connection with the Benistar 419 Plan & Trust are deductible. Regarding this issue, petitioners have each signed a stipulation to be bound by the decision of the highest court resolving Mark Curcio and Barbara Curcio, docket No. 1768-07, Ronald D. Jelling and Lorie A. Jelling, docket No. 1769-07, Samuel H. Smith, Jr., and Amy L. Smith, docket No. 14822-07, or Stephen Mogelefsky and Roberta Mogelefsky, docket No. 14917-07 (collectively, the controlling cases), which were consolidated for trial, briefing, and opinion. The remaining issue in these consolidated cases is whether petitioners are each liable for a section 6662A accuracy-related penalty.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue.

<u>Background</u>

All of the facts have been stipulated, and the stipulated facts are incorporated as our findings by this reference. The parties have stipulated that the proper venue for an appeal of

this decision is the Court of Appeals for the Second Circuit. See sec. 7482(b)(2).

The relevant facts largely concern petitioners' involvement in the Benistar 419 Plan & Trust (Benistar Plan), which was discussed in Curcio v. Commissioner, T.C. Memo. 2010-115. The parties have stipulated into the record in this case the evidence and trial testimony from Curcio, with only minor additions or clarifications that apply to petitioners. We therefore incorporate by this reference our findings in Curcio regarding the policies and mechanics of Benistar Plan.

Benistar Plan was crafted by Daniel Carpenter to be a multiple-employer welfare benefit trust under section 419A(f)(6) providing preretirement life insurance to covered employees. Employers enroll in Benistar Plan and make contributions to a trust account for the benefit of select employees. In return, Benistar Plan promises to pay death benefits to those employees if they die while employed. Benistar Plan has advertised that enrolled employers' contributions are deductible.

Benistar Plan uses employers' contributions to acquire one or more life insurance policies on employees covered by the plan. We refer to these life insurance policies as the underlying insurance policies, because they underlie each policy issued by Benistar Plan and, as a result, Benistar Plan is fully reinsured.

Benistar Plan withdraws from the trust account as necessary to pay the premiums on the underlying policies.

Petitioner McGehee Family Clinic, an entity taxed as a C corporation, enrolled in Benistar Plan in May 2001. McGehee Family Clinic first claimed a deduction for a contribution to Benistar Plan on its return filed July 8, 2002, for its tax year ended March 31, 2002. McGehee Family Clinic contributed $50,000 to Benistar Plan in connection with plan participation in 2004. It claimed a deduction of $45,833 relating to the contribution to Benistar Plan during the corporation's tax year ended March 31, 2005. McGehee Family Clinic's return did not include a Form 8886, Reportable Transaction Disclosure Statement, or materially similar document. In a notice of deficiency dated March 21, 2008, the Internal Revenue Service (IRS) disallowed McGehee Family Clinic's deduction of the contribution to Benistar Plan.

Petitioner Robert Prosser was a shareholder of McGehee Family Clinic at all relevant times. The Robert and Mary Prosser's jointly filed return for 2004 did not include a Form 8886 or materially similar document. In a notice of deficiency dated March 21, 2008, the IRS adjusted the Prossers' 2004 income to include the $50,000 payment to Benistar Plan from McGehee Family Clinic.

## Discussion

Section 6662A was enacted as part of the American Jobs Creation Act of 2004, Pub. L. 108-357, section 812(a), 118 Stat. 1577. It is effective for tax years ending after October 22, 2004. Id. sec. 812(f), 118 Stat. 1580. It provides that "If a taxpayer has a reportable transaction understatement for any taxable year, there shall be added to the tax an amount equal to 20 percent of the amount of such understatement." Sec. 6662A(a). The penalty applies to any deficiency which is attributable to any listed transaction or any reportable transaction if a significant purpose of the transaction is the avoidance or evasion of Federal income tax. Sec. 6662A(b)(2). The penalty is increased from 20 to 30 percent of the amount of the understatement if the disclosure requirements of section 6664(d)(2)(A), requiring disclosure in accordance with the regulations prescribed under section 6011, are not met. Sec. 6662A(c).

Respondent argues that petitioners are liable for the penalty because they participated in a listed transaction. A listed transaction is a transaction that is the same as or substantially similar to one of the types of transactions that the IRS has determined to be a tax avoidance transaction and has identified by notice, regulation, or other form of published guidance as a listed transaction. Sec. 6707A(c)(2); sec. 1.6011-

4(h), Income Tax Regs. (incorporating by reference section 1.6011-4T(b)(2), Temporary Income Tax Regs., 65 Fed. Reg. 11207 (Mar. 2, 2000)); see Blak Invs. v. Commissioner, 133 T.C. ___, ___, ___ (2009) (slip op. at 23, 29-32). Respondent claims that Benistar Plan is substantially similar to the transaction described in Notice 95-34, 1995-1 C.B. 309, and first identified as a listed transaction in Notice 2000-15, 2000-1 C.B. 826.

Notice 95-34, 1995-1 C.B. at 309-310, states:

In recent years a number of promoters have offered trust arrangements that they claim satisfy the requirements for the 10-or-more-employer plan exemption and that are used to provide benefits such as life insurance, disability, and severance pay benefits. Promoters of these arrangements claim that all employer contributions are tax-deductible when paid, relying on the 10-or-more-employer exemption from the section 419 limits and on the fact that they have enrolled at least 10 employers in their multiple employer trusts.

These arrangements typically are invested in variable life or universal life insurance contracts on the lives of the covered employees, but require large employer contributions relative to the cost of the amount of term insurance that would be required to provide the death benefits under the arrangement. The trust owns the insurance contracts. The trust administrator may obtain the cash to pay benefits, other than death benefits, by such means as cashing in or withdrawing the cash value of the insurance policies. Although, in some plans, benefits may appear to be contingent on the occurrence of unanticipated future events, in reality, most participants and their beneficiaries will receive their benefits.

The trusts often maintain separate accounting of the assets attributable to the contributions made by each subscribing employer. Benefits are sometimes related to the amounts allocated to the employees of the participant's employer. For example, severance and disability benefits may be subject to reduction if the

assets derived from an employer's contributions are insufficient to fund all benefits promised to that employer's employees.  In other cases, an employer's contributions are related to the claims experience of its employees.  Thus, pursuant to formal or informal arrangements or practices, a particular employer's contributions or its employees' benefits may be determined in a way that insulates the employer to a significant extent from the experience of other subscribing employers.

According to the regulations applicable to transactions entered into on or after January 1, 2001, where the taxpayer did not report the transaction on a tax return filed on or before June 14, 2002, a transaction is substantially similar to a transaction identified as a listed transaction in published guidance if the transaction is expected to obtain the same or similar types of tax benefits and is either factually similar or based on the same or similar tax strategy.  Sec. 1.6011-4T(b)(1)(i), (g), Temporary Income Tax Regs., 67 Fed. Reg. 41327, 41328 (June 18, 2002); see Blak Invs. v. Commissioner, supra at ___ (slip op. at 25).

Benistar Plan was expected to obtain the same type of tax benefits as listed in Notice 95-34, supra.  The tax benefit listed in Notice 95-34, supra, is the deduction of contributions made to the trust arrangement described within.  Benistar Plan advertised that contributions to the plan were tax deductible. The benefits of enrollment listed in the packet sent to newly enrolled employers included "virtually unlimited deductions".

Benistar Plan was also factually similar to the plan listed in Notice 95-34, supra, at all relevant times.  Benistar Plan was a trust arrangement that claimed to satisfy the requirements for the 10-or-more-employers-plan exemption under section 419A(f)(6) and offered life insurance.  Although the record does not include the underlying policies the Prossers selected for Benistar Plan to purchase, we note that the policies selected by the taxpayers in Curcio v. Commissioner, T.C. Memo. 2010-115, were overwhelmingly variable or universal life policies.  As we noted in Curcio, the policies required large contributions relative to the cost of the amount of term insurance that would be required to provide the death benefits under the arrangement.  Benistar Plan owns the insurance contracts.

Our holding in Curcio that contributions to Benistar Plan were not deductible under section 162(a) was predicated upon our conclusion that the Benistar Plan participants in those cases had the right to receive the value reflected in the underlying insurance policies purchased by Benistar Plan despite the fact that the payment of benefits by Benistar Plan seemed to be contingent upon an unanticipated event (the death of the insured while employed).  As Carpenter acknowledged, as long as plan participants were willing to abide by Benistar Plan's distribution policies, there was no reason ever to forfeit a policy to the plan.  In fact, in estimating life insurance rates,

the taxpayers' expert in <u>Curcio</u> assumed that there would be no forfeitures, even though he admitted that an insurance company would generally assume a reasonable rate of policy lapse.

Petitioners argue that Benistar Plan has over $20 million in forfeitures, a reflection of its rigorous enforcement of its forfeiture policies. However, as we noted in <u>Curcio</u>, it is unclear whether the $20 million figure includes amounts due to Benistar Plan from the purported loans issued by the plan to withdrawing employees after mid-2005. Petitioners have failed to clarify how the $20 million figure was calculated, so we cannot rely upon it to counter the evidence that most participants in Benistar Plan and their beneficiaries receive their benefits despite the alleged contingency of those benefits on the occurrence of an unanticipated event.

Unlike the plan in Notice 95-34, <u>supra</u>, Benistar Plan does not reduce benefits if the assets derived from an employer's contributions are insufficient to fund all of the benefits promised to that employer's employees. However, Benistar Plan does maintain separate accounting of the assets attributable to contributions made by each subscribing employer in an internal spreadsheet. Benistar Plan permits employers to make contributions larger than those necessary to maintain the policy; and assuming Benistar Plan has sufficient assets to cover current liabilities, the contribution is used only for the policy to

which it is allocated.  Because Benistar Plan obtains similar types of tax benefits and is factually similar to the listed transaction in Notice 95-34, supra, we conclude that Benistar Plan is a listed transaction under section 6707A(c)(2).

Under section 7491(c), the Commissioner bears the burden of production with regard to penalties and must come forward with sufficient evidence indicating that it is appropriate to impose penalties.  See Higbee v. Commissioner, 116 T.C. 438, 446 (2001).

The parties agree that McGehee Family Clinic deducted an amount related to a contribution to Benistar Plan during its taxable year ended March 31, 2005.  McGehee Family Clinic's deduction of its contribution to Benistar Plan was an improper tax treatment of an item attributable to a listed transaction. See sec. 6662A(b).  Respondent has therefore met the burden of showing that it is appropriate to impose a penalty on McGehee Family Clinic under section 6662A.

The parties do not dispute that the Prossers were covered employees who benefited from McGehee Family Clinic's contribution to Benistar Plan.  Nor do they dispute that Robert Prosser was a shareholder in McGehee Family Clinic.  Thus the amount of McGehee Family Clinic's contribution to Benistar Plan should have been included in the Prossers' income.  See HJ Builders, Inc. v. Commissioner, T.C. Memo. 2006-278 (payments by a company for a car used personally by a shareholder's wife are constructive

dividends to the shareholder); Alexander Shokai, Inc. v. Commissioner, T.C. Memo. 1992-41 (gratuitous payments by a company to a shareholder's wife are constructive dividends to the shareholder), affd. 34 F.3d 1480 (9th Cir. 1994); Broad v. Commissioner, T.C. Memo. 1990-317 (the distribution of corporate funds to the children of controlling shareholders are deemed to be constructive dividends to the controlling shareholders absent a showing that the payments were made for bona fide business purposes and were not due to family considerations); see also 58th St. Plaza Theatre, Inc. v. Commissioner, 195 F.2d 724, 725-726 (2d Cir. 1952), affg. 16 T.C. 469 (1951). The Prossers' failure to include the amount of the contribution in income was an improper tax treatment of an item attributable to a listed transaction. See sec. 6662A(b). Respondent has therefore met the burden of showing that it is appropriate to impose a penalty on the Prossers under section 6662A.

Respondent claims that McGehee Family Clinic is subject to the increased 30-percent penalty. McGehee Family Clinic filed its Federal income tax return for the taxable year ended March 31, 2005, but did not attach a disclosure statement described in section 1.6011-4T(c), Temporary Income Tax Regs., 67 Fed. Reg. 41327 (June 18, 2002), or any materially similar document, indicating its participation in Benistar Plan. McGehee Family Clinic did not disclose its participation in Benistar Plan in

accordance with section 6664(d)(2)(A), and it is liable for the increased 30-percent penalty.  See sec. 6662A(c).

Section 6664(d) provides that under certain circumstances a taxpayer may avoid section 6662A penalties if there was reasonable cause for the taxpayer's treatment of the reportable or listed transaction and the taxpayer acted in good faith. However, this exception applies only if the transaction was disclosed in accordance with the regulations prescribed under section 6011.  Sec. 6664(d)(2)(A).  Assuming the Commissioner has met the burden of production regarding the penalty, the taxpayer bears the burden of proving the penalty is inappropriate because the taxpayer acted with reasonable cause and in good faith.  See Williams v. Commissioner, 123 T.C. 144, 153 (2004); Higbee v. Commissioner, supra at 446-447.

Although petitioners claim that they "clearly disclosed their tax deduction on the appropriate line and in statements accompanying their [returns]", there is no evidence that petitioners properly disclosed their involvement in Benistar Plan as required under section 6664(d)(2)(A).  Because petitioners have not introduced credible evidence with respect to this issue, they are not entitled to shift the burden of proof.  See sec. 7491(a).  We therefore conclude that petitioners are not entitled to the exception under section 6664(d).

Petitioners argue that "The assessment of [section 6662A] penalties against Petitioners raises due process issues that have been resolved in Petitioners' favor in at least a half-dozen Supreme Court decisions that are on point with these cases".  As petitioners note in their brief, to fall within the protection of the Due Process Clause, petitioners must show that the assessment of penalties in these cases is so harsh and oppressive as to transgress the constitutional limitation.  See DeMartino v. Commissioner, 862 F.2d 400, 408-409 (2d Cir. 1988), affg. 88 T.C. 583 (1987); see also United States v. Carlton, 512 U.S. 26, 30-31 (1994); Welch v. Henry, 305 U.S. 134, 147 (1938); Blodgett v. Holden, 275 U.S. 142, 147 (1927).

Petitioners argue that

the violation of due process as it affects Petitioners in these cases is that there was no fair warning or 'foreseeability' on the part of Petitioners that a contribution to a welfare benefit plan in 2004 would render them liable for a penalty in 2008 for a failure to fill out a form that was unknown to them in 2004 when the transaction was completed or in 2005 when the form was to be filed with the individual's personal and corporate tax return.

Petitioners appear to be arguing that section 6662A is unconstitutionally harsh and oppressive because it is being applied retroactively and without fair warning.

Section 6662A is not retroactive, nor is it being applied retroactively; it was enacted October 22, 2004, and is applicable for tax years ended after that date.  The tax years currently at

issue ended March 31, 2005, for McGehee Family Clinic and December 31, 2004, for the Prossers. Thus, at the time that petitioners were deciding on the tax treatment of contributions to Benistar Plan for the years at issue, section 6662A had already been enacted. Petitioners may, consistent with the Due Process Clause, be liable for a penalty on a deficiency stemming from a transaction entered into long before the penalty was enacted. See Patin v. Commissioner, 88 T.C. 1086, 1127 n.34 (1987) (increased interest charged on deficiencies from substantial underpayments attributable to tax-motivated transactions that occurred years before the interest rate increase was enacted is not unconstitutional), affd. without published opinion 865 F.2d 1264 (5th Cir. 1989), affd. without published opinion sub nom. Hatheway v. Commissioner, 856 F.2d 186 (4th Cir. 1988), affd. sub nom. Skeen v. Commissioner, 864 F.2d 93 (9th Cir. 1989), affd. sub nom. Gomberg v. Commissioner, 868 F.2d 865 (6th Cir. 1989); DeMartino v. Commissioner, 88 T.C. at 587-588 (same); Solowiejczyk v. Commissioner, 85 T.C. 552, 555-556 (1985) (same), affd. without published opinion 795 F.2d 1005 (2d Cir. 1986). Petitioners' ignorance of the law is no excuse for their failure to comply with it. See United States v. Intl. Minerals & Chem. Corp., 402 U.S. 558, 563 (1971) ("The principle that ignorance of the law is no defense applies whether the law be a statute or a duly promulgated and published regulation.");

Barlow v. United States, 32 U.S. 404, 411 (1833) (ignorance of the law is no excuse in either civil or criminal cases); Dezaio v. Port Auth., 205 F.3d 62, 64 (2d Cir. 2000) (ignorance of the law is no excuse for missing the deadline to file a complaint for discrimination); Pagnucco v. Pan Am. World Airways, Inc. (In re Air Disaster at Lockerbie Scot. on Dec. 21, 1988), 37 F.3d 804, 818 (2d Cir. 1994) (ignorance of the law is no excuse in civil or criminal cases).

The cases petitioners cite are distinguishable in that they all discuss taxing statutes applied retroactively. See Untermyer v. Anderson, 276 U.S. 440 (1928) (holding that the retroactive provision of the novel gift tax of the Revenue Act of 1924 was invalid as applied to gifts antedating the act); Blodgett v. Holden, supra (four Justices thought that the retroactive application of a gift tax violates the Due Process Clause); Nichols v. Coolidge, 274 U.S. 531, 543 (1927) (holding that "the statute here under consideration, in so far as it requires that there shall be included in the gross estate the value of property transferred by a decedent prior to its passage merely because the conveyance was intended to take effect in possession or enjoyment at or after his death, is arbitrary, capricious and amounts to confiscation"). Milliken v. United States, 283 U.S. 15, 20-21 (1931), cited by petitioners in support of their argument, succinctly highlights the distinction between that case and

petitioners': "This court has held the taxation of gifts made, and completely vested beyond recall, before the passage of any statute taxing them, to be so palpably arbitrary and unreasonable as to infringe the due process clause."

Petitioners complain that "since Respondent is seeking to explain now why he has the right to require of Petitioners that they file a Form 8886 in 2005 for the 2004 year or face a penalty, where was Respondent's warning in 2005, 2006, or 2007 that the Benistar 419 Plan was 'substantially similar' to Notice 95-34?" Respondent is not required to send petitioners personalized notices of the applicability of a penalty. Such a requirement would be administratively impossible, and it runs counter to the definition of listed transactions, which include transactions substantially similar to those identified in published guidance. See sec. 6707A(c)(2).

In reaching our decision, we have considered all arguments made by the parties. To the extent not mentioned or addressed, they are irrelevant or without merit.

To await final decisions under section 7481 in the controlling cases,

An appropriate order will

be issued.