John G. ORDWAY and Margaret M. Ordway, Plaintiffs–Appellees,

v.

UNITED STATES of America, Defendant–Appellant.

No. 89–5753.

United States Court of Appeals, Eleventh Circuit.

Aug. 10, 1990.

Gary R. Allen, Chief, Appellate Section, Tax Div., Dept. of Justice, Barbara I. Hodges, Brian Griffin, Jonathan S. Cohen, and Calvin C. Curtis, Washington, D.C., for defendant-appellant.

Cynthia S. Rosenblatt, Burton G. Ross, and Craig D. Norman, Ross, Rosenblatt & Wilson, Minneapolis, Minn., for plaintiffs-appellees.

Before FAY and JOHNSON, Circuit Judges, and GIBSON *, Senior Circuit Judge.

JOHNSON, Circuit Judge:

The United States ("the government") appeals from the district court's grant of summary judgment in favor of plaintiffs/appellees John G. Ordway, Jr. and Margaret M. Ordway ("taxpayers") and its order directing a refund of federal gift taxes paid by the taxpayers for the calendar quarters ending September 30, 1979 and March 31, 1980.

## I. STATEMENT OF THE CASE

On January 16, 1917, Lucius P. Ordway established an irrevocable inter vivos trust, administered under Minnesota law. He funded the trust with some 38,200 shares of Minnesota Mining and Manufacturing Company ("3M") stock and other assets. The trust provided that the trust income was to be paid to Lucius' wife and five children for their lives. On the death of the last surviving life beneficiary, the trust corpus was to be distributed to Lucius' grandchildren *per capita*. If any of the grandchildren died prior to termination of the trust, their share of the corpus would be distributed to their surviving issue *per stirpes*.

John G. Ordway, Jr., born on November 29, 1922, is one of Lucius Ordway's grandsons. At birth, he acquired a contingent remainder interest in the trust. John Ordway became aware of this interest in 1941,

* Hon. Floyd R. Gibson, Senior U.S. Circuit Judge    for the Eighth Circuit, sitting by designation.

at age nineteen. On June 27, 1979, Katherine G. Ordway, taxpayer's aunt and last survivor of Lucius Ordway's wife and five children, died unmarried and without issue. At this point the trust terminated and the grandchildrens' contingent remainder interests vested. On August 23, 1979, John Ordway (then fifty-six years old) filed a partial disclaimer of his interest in the trust corpus.[1] He filed the disclaimer in the Ramsey County District Court of Minnesota, and the disclaimer was valid and effective under Minnesota law. As a result of the disclaimer, John Ordway's three children received the disclaimed portion of his interest *per stirpes*.

On or about November 15, 1979, John Ordway filed a third quarter gift tax return with the Internal Revenue Service ("IRS"). He disclosed the 1979 disclaimer, but stated that the disclaimer was not a transfer subject to gift tax.[2] On March 19, 1982, following an audit of that return, John Ordway filed an amended 1979 third quarter gift tax return, and his wife Margaret Ordway filed an original third quarter gift tax return. Both of the returns treated the 1979 disclaimer as a taxable transfer under the gift tax provisions. They treated the gift as having been made one-half by each of them under Internal Revenue Code ("the Code") section 2513. The taxpayers each paid the taxes assessed against these returns. The IRS later assessed interest on the deficiencies, which the taxpayers also paid.

On March 10, 1980, John Ordway made a gift of 3M shares which was unrelated to the 1979 disclaimer. The taxpayers filed timely gift tax returns for the first quarter of 1980, treating the 1980 gift as having been made one-half by each of them. They paid the gift tax as reported. As a result of a subsequent audit, the IRS Commissioner asserted a deficiency in the 1980 first quarter tax for two reasons. First, because the disclaimer was deemed taxable in the third quarter of 1979, the taxpayers' respective cumulative gift tax brackets for the first quarter of 1980 were increased. Second, the Commissioner disallowed a $240,068 blockage discount which the taxpayers had claimed on their 1980 returns.

The taxpayers paid the asserted deficiencies, then filed timely claims for refunds of those taxes and interest. The government disallowed the refund claims in full, finding that the disclaimer was a transfer subject to gift tax. On March 16, 1987, the taxpayers sued the government for recovery of the taxes and interest pursuant to 26 U.S.C.A. § 7422 and 28 U.S.C.A. § 1346(a)(1).

In March 1988, both parties submitted motions for summary judgment on the question of whether the 1979 disclaimer was taxable. The government contended that the Supreme Court's decision in *Jewett v. Commissioner*, 455 U.S. 305, 102 S.Ct. 1082, 71 L.Ed.2d 170 (1982), authorized the IRS to collect a gift tax on the disclaimed interest. The taxpayers disagreed. On March 13, 1989, the district court found that *Jewett* did not apply and that the taxpayers were entitled to refund of the gift taxes, and the court granted the taxpayers' motion for summary judgment. On May 16, 1989, the court ordered the government to refund $2,736,776.90 plus interest to John Ordway and $2,633,559.40

---

1. At his birth, John Ordway became entitled to one twenty-fifth of the trust income. When the trust terminated, he became entitled to one thirteenth of the corpus of the trust. Ordway disclaimed a twenty-four percent interest in the difference between one twenty-fifth of the corpus and one-thirteenth of the corpus, as well as some of the income.

2. Under 26 C.F.R. § 25.2511–1(c), a disclaimed interest is not taxable if the disclaimer is valid under state law and is made within a reasonable time after the transfer that created the interest. John Ordway filed his disclaimer 38 years after he discovered his contingent remainder interest,

but only two months after his interest vested. He relied on *Keinath v. Commissioner of Internal Revenue*, 480 F.2d 57 (8th Cir.1973), *overruled by Jewett v. Commissioner of Internal Revenue*, 455 U.S. 305, 102 S.Ct. 1082, 71 L.Ed.2d 170 (1982) in concluding that he did not owe gift tax on the disclaimed interest. The *Keinath* court held that "remainder interests that are not subject to divestiture should be disclaimed within a reasonable time after the testator's death, and where the remainder interest is subject to divestiture a disclaimer may be filed within a reasonable time after the termination of the life estate." *Keinath*, 480 F.2d at 63.

plus interest to Margaret Ordway. The government appeals.

On appeal, we must determine whether the district court erred in holding that John Ordway's partial disclaimer in 1979 of a vested remainder interest in an inter vivos trust created in 1917 was subject to the federal gift tax.[3]

## II. ANALYSIS

### A. *Standard of Review*

The grant of a motion for summary judgment is subject to *de novo* review by this Court. *Shipes v. Hanover Ins. Co.,* 884 F.2d 1357, 1359 (11th Cir.1989).

### B. *Whether Jewett Applies to an Interest Created Before 1932*

Section 2501(a)(1) of the Code imposes tax on the transfer of property by gift. That tax applies whether the gift is direct or indirect. Treasury regulation 26 C.F.R. § 25.2511–1(c) provides that an indirect transfer by means of disclaimer is not a taxable gift if (1) the refusal to accept ownership is made within a reasonable time after knowledge of the existence of the transfer, (2) the refusal is unequivocal, and (3) the refusal is effective under local law. In *Jewett v. Commissioner,* 455 U.S. 305, 310, 102 S.Ct. 1082, 1086–87, 71 L.Ed.2d 170 (1982), the Supreme Court held that a "reasonable time" is measured from the date of the transfer which created the disclaimed interest, not from the date on which that interest vested. *Jewett,* 455 U.S. at 318–19, 102 S.Ct. at 1090–91.

█ In the present case, the district court found that *Jewett* did not apply to John Ordway's transfer by disclaimer of his vested remainder interest because *Jewett* was an interpretation of the federal gift tax. The court found that the gift tax did not apply to Lucius Ordway's trust because Lucius created the trust in 1917, prior to the existence of a federal gift tax, and the gift tax specifically precludes retroactive application.[4] While these facts are true, they are not dispositive of this case.

The Revenue Act of 1924 was Congress' first attempt to pass a federal gift tax. In two different decisions, the Supreme Court held that this statute was unconstitutional because it imposed a gift tax on transfers made before the date of the Act. *See Untermyer v. Anderson,* 276 U.S. 440, 446, 48 S.Ct. 353, 354, 72 L.Ed. 645 (1928); *Blodgett v. Holden,* 275 U.S. 142, 147, 48 S.Ct. 105, 106–07, 72 L.Ed. 206 (1927). Congress passed the first valid gift tax in 1932, and that Act specifically stated that "[t]he tax shall not apply to a transfer

3. There is some dispute between the parties regarding whether the Commissioner's disallowance of the $240,068 blockage discount claimed on the taxpayers' 1980 returns has been properly appealed. Both parties briefed the issue in the district court. The government asserted that the taxpayers did not raise the issue in their refund claims and therefore that the district court had no jurisdiction to hear the issue. It is not clear from the district court opinion whether the district court found that it had jurisdiction or not. Before this Court, the government argues in a footnote that the district court did not discuss the blockage issue. The taxpayers, also in a footnote, state that the district court found that it had jurisdiction to decide the blockage issue. Because the parties do not argue the issue on appeal, this Court is not equipped to resolve it. On remand, the district court should clarify the blockage issue.

4. The district court also based its decision on the fact that the amount of money to which John Ordway was entitled could change at any time before the trust terminated if either new contingent remainderpersons were added or the value of the stocks in the corpus changed. The district court reasoned that because the value of John Ordway's interest was not fixed, it was impossible for the government to know the value of the taxable transfer until the trust terminated. It is not clear how this concern is relevant to the crucial issue in the case: whether John Ordway disclaimed his interest within a reasonable time of discovering his interest so that his disclaimer was not subject to the gift tax. How the government would have calculated a gift tax at any time before the disclaimer in 1979 has no relevance to this question. Further, the idea that transfer of a contingent remainder interest cannot be taxed until it vests was squarely refuted in *Jewett.* The *Jewett* Court stated that because a disclaimant may decide to retain the disclaimed contingent remainder interest, the disclaimer of a contingent remainder interest is a taxable gift. *Jewett,* 455 U.S. at 317–18, 102 S.Ct. at 1090–91. *See also Jewett,* 455 U.S. at 315, 102 S.Ct. at 1089 ("the purpose of the change in [26 C.F.R. § 25.2511–1(c) ] was not to exclude contingent remainders").

made on or before the date of the enactment of this Act." Revenue Act of 1932, 47 Stat. 169, section 501(b).[5] It is clear, therefore, that Lucius Ordway's transfers to his heirs by means of the trust are not subject to the gift tax. What is questionable is whether John Ordway's indirect transfer of his interest by means of the disclaimer executed in 1979 acted as a separate, taxable transfer.[6]

Two different Treasury regulations treat disclaimers as separate taxable transfers. Volume 26 C.F.R. § 25.2511–1(c)(2) states:

> In the case of taxable transfers creating an interest in the person disclaiming made before January 1, 1977, where the law governing the administration of the decedent's estate gives a beneficiary, heir, or next-of-kin a right completely and unqualifiedly to refuse to accept ownership of property transferred from

a decedent.... a refusal to accept ownership does not constitute the making of a gift if the refusal is made within a reasonable time after knowledge of the existence of the transfer.[7]

Title 26, U.S.C.A. § 2518(a) states: "For the purposes of this subtitle, if a person makes a qualified disclaimer with respect to any interest in property, this subtitle shall apply with respect to such interest as if the interest had never been transferred to such person."[8] Section 2518(a) applies to disclaimers of interests created by taxable transfers made after December 31, 1976. Pub.L. 94–455, Title XX, § 2009(b)(1), Oct. 4, 1976, 90 Stat. 1893. Under section 2518, then, disclaimers do not act as taxable transfers because they function to pass the interest from the donor (in this case, Lucius Ordway) to the disclaimee (in this case, John Ordway's three children),[9] while under section 25.-

---

5. *Cf. Hassett v. Welch,* 303 U.S. 303, 314, 58 S.Ct. 559, 565, 82 L.Ed. 858 (1938) ("a law is presumed, in the absence of clear expression to the contrary, to operate prospectively; ... if doubt exists as to the construction of a taxing statute, the doubt should be resolved in favor of the taxpayer....").

6. The taxpayers argue that the Supreme Court resolved this question in *Jewett* by means of the following sentence: "Indeed, petitioner does not argue that taxation of the disclaimers is inconsistent with the statutory provisions imposing a gift tax, which were enacted long before petitioner's interest in the trust was created." *Jewett,* 455 U.S. at 317, 102 S.Ct. at 1090. The taxpayers claim that in this sentence the Supreme Court established that a disclaimer is subject to taxation only if the interest disclaimed was created after the statutory provisions imposing a gift tax were enacted. Even read out of context, this sentence does not state clearly the proposition urged by the taxpayers. Read in context, it is clear that the Court held that because Jewett made his disclaimer subsequent to the enactment of 26 C.F.R. § 25.2511–1(c), he could not claim lack of notice regardless of when his interest was created. The same is true in John Ordway's case. Because John Ordway disclaimed his interest long after 26 C.F.R. § 25.2511–1(c) was promulgated, he cannot claim that he had no notice that disclaimers constituted taxable transfers.

7. This version is the result of a 1986 amendment. Thus the regulation read differently at the time that John Ordway made his disclaimer. Unless the Secretary prescribes otherwise, however, tax regulations apply retroactively. 26 U.S.C.A. § 7805(b).

8. A qualified disclaimer is (1) an irrevocable refusal to accept an interest (2) in writing (3) received by the transferor or the holder of legal title no later than nine months after the later of the transfer creating the interest or the disclaimer's twenty-first birthday where (4) the disclaimer has not accepted the interest or its benefits and (5) the interest passes without any direction on the disclaimer's part to either the spouse of the decedent or a person other than the disclaimer. 26 U.S.C.A. § 2518(b).

9. This provision is logically the more attractive, because it is difficult to comprehend why one should be taxed for transferring an interest from which one never has benefitted. It is quite clear, however, that the government does tax such interests, even if the transferor might never have benefitted from the interest. In *Jewett,* for example, the transferor disclaimed a contingent remainder interest which would have vested only if he survived his mother. *Jewett,* 455 U.S. at 306, 102 S.Ct. at 1084–85. Unlike the interest in the present case, Jewett's interest had not vested at the time of disclaimer; not only did he not accept his interest before disclaiming it, but he was incapable of doing so. Even though Jewett might have predeceased his mother and never benefitted from his interest, the Supreme Court held that the disclaimer constituted a taxable transfer. Under *Jewett,* therefore, it is clear that a transferor may be taxed for transferring an interest from which he has never actually benefitted.

2511–1(c), disclaimers do act as taxable transfers unless they meet two specific conditions.

■ Before deciding which provision applies to John Ordway's disclaimer, however, we first must decide whether Lucius Ordway's original transfer was the kind of transfer which would bring the disclaimer under these provisions. Both provisions assume that disclaimers are created by *taxable* transfers. As discussed above, Lucius Ordway's original transfer, which created the interest that John Ordway disclaimed in 1979, was not taxable in the sense that it was made before the gift tax existed. In discussing when a disclaimer must be delivered to the transferor under section 25.-2518, however, the Treasury regulations explain that, "With respect to inter vivos transfers, a taxable transfer occurs when there is a completed gift for Federal gift tax purposes regardless of whether a gift tax is imposed on the completed gift." 26 C.F.R. § 25.2518–2(c)(3). For the purposes of measuring time, then, a taxable transfer occurs whenever there happens "any transaction in which an interest in property is gratuitously passed or conferred upon another," 26 C.F.R. § 25.2511(c)(1), even if that transaction was not subject to the gift tax. Under this definition, Lucius Ordway's 1917 gift is a taxable transfer for measuring purposes, even though it was not subject to tax.

■ Having concluded that the 1917 gift was a taxable transfer, it is a simple matter to determine which provision applies. Because Ordway made the original transfer before January 1, 1977, 26 C.F.R. § 25.2511–1(c)(2) applies. Under that regulation, all disclaimers of interests created by taxable transfers made before January 1, 1977, are subject to the federal gift tax

unless the disclaimer was valid under state law and was made within a reasonable time of the knowledge of the existence of the transfer. We now must determine whether John Ordway's disclaimer met these two requirements.

### C. *Whether the Taxpayer Filed his Disclaimer Within a Reasonable Time*

■ It is undisputed that John Ordway's 1979 disclaimer was valid under Minnesota law.[10] The government argues, however, that the disclaimer was not made "within a reasonable time after knowledge of the existence of the transfer," because John Ordway learned of his contingent remainder interest in 1941, but did not disclaim it until 1979. Under the reasoning in *Jewett v. Commissioner,* this argument is correct. The *Jewett* Court held that for the purposes of section 25.2511–1(c), the transfer of property occurs at the time of the decedent's death, not at the time of the vesting of the interest in the beneficiary. *Jewett,* 455 U.S. at 318–19, 102 S.Ct. at 1090–91. Under *Jewett,* therefore, the transfer in the taxpayers' case occurred in 1917.[11] John Ordway received knowledge of the transfer in 1941, and reached the age of majority in 1943. Yet he did not disclaim his interest until thirty-eight years after he received knowledge of the transfer and thirty-six years after he reached the age of majority. This is some twelve to fourteen years over the twenty-four year period which the Supreme Court found unacceptable in *Jewett.*

The Supreme Court did not decide *Jewett* until three and a half years after John Ordway filed his disclaimer and over three years after he first reported the disclaimed amount to the IRS. Before the *Jewett* decision, the definition of "reasonable

**10.** Under Minnesota law a valid disclaimer must be filed within six months of the event which causes the disclaimant to be finally ascertained and his interest to be indefeasibly fixed, and must be filed in a Minnesota district court. Minn.Stat. § 501.211, subds. 1(c), 3, 4.

**11.** Under Minnesota law, a disclaimer is filed within a reasonable time if it is filed within six months of the event which causes the disclaimant's interest to become indefeasibly fixed.

Minn.Stat. § 501.211, subd. 3. State law controls a federally taxed revenue, however, "only when the federal taxing act, by express language or necessary implication, makes its own operation dependent upon state law." *Burnet v. Harmel,* 287 U.S. 103, 110, 53 S.Ct. 74, 77, 77 L.Ed. 199 (1932). The federal taxing act regarding reasonable time does not make its operation dependent on state law, therefore Minnesota law does not control.

time" in the Eighth Circuit [12] was the definition provided in *Keinath v. Commissioner of Internal Revenue*, 480 F.2d 57 (8th Cir.1973), *overruled by Jewett v. Commissioner of Internal Revenue*, 455 U.S. 305, 102 S.Ct. 1082, 71 L.Ed.2d 170 (1982). The *Keinath* court held that if a remainder interest was subject to divestiture, a disclaimer of that interest should be filed within a reasonable time after the termination of the life estate. *Id.* at 63. Because John Ordway's interest was contingent on his surviving all of Lucius Ordway's children, the interest was subject to divestiture. Under *Keinath*, therefore, John Ordway's disclaimer had to be filed within a reasonable time after termination of the life estate. The life estate terminated with Katherine Ordway's death on June 27, 1979, and John Ordway filed his disclaimer two months later, clearly within a reasonable time as defined by *Keinath*.

■ On appeal neither party discusses whether it is appropriate to apply the *Jewett* decision retroactively to John Ordway's disclaimer. Although there has been no clear holding on the issue, at least two justices on the Supreme Court and one judge on this Court consider non-retroactivity to be an affirmative defense, which is waived if it is not raised. *See Zant v. Moore*, 489 U.S. 836, 109 S.Ct. 1518, 1519, 103 L.Ed.2d 922 (1989) (Blackmun, J., dissenting) ("petitioner did not raise nonretroactivity as a defense to respondent's claim ..., and that defense therefore should be deemed waived"); *Penry v. Lynaugh*, —— U.S. ——, 109 S.Ct. 2934, 2963, 106 L.Ed.2d 256 (1989) (Stevens, J., concurring in part and dissenting in part) ("Nor am I at all sure that courts should decide the retroactivity issue if it was not raised below."); *Moore v. Zant*, 885 F.2d 1497, 1524 (11th Cir.1989) (Johnson, J., dissenting) ("It appears that non-retroactivity is an affirmative defense. *See United States v. Francischine*, 512 F.2d 827, 830 (5th Cir.), *cert. denied*, 423 U.S. 931, 96 S.Ct. 284, 46 L.Ed.2d 261 (1975)"). *But see Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 1069, 103 L.Ed.2d 334 (1989) (Su-

preme Court may address nonretroactivity issue *sua sponte*); *Moore v. Zant*, 885 F.2d at 1519 n. 5 (Kravitch, J., dissenting) (permitting state to waive *Teague v. Lane* nonretroactivity principles would result in unfairness and disparate treatment); *White v. Finkbeiner*, 753 F.2d 540, 543 (7th Cir.1985) (while nonretroactivity may be an affirmative defense subject to waiver, appellate court will consider nonretroactivity when Supreme Court *sua sponte* orders it to do so); *Weaver v. Bowers*, 657 F.2d 1356, 1362 (3rd Cir.1981), *cert. denied*, 455 U.S. 942, 102 S.Ct. 1435, 71 L.Ed.2d 653 (1982) (although nonretroactivity was not timely raised, the court will consider the issue because unusual circumstances require it). Following this reasoning, we find that the taxpayers' failure to raise the nonretroactivity defense constitutes a waiver of that defense. Thus *Jewett* applies, with the result that John Ordway did not file his disclaimer within a reasonable time after obtaining knowledge of the transfer creating his interest, causing the disclaimed interest to be subject to the gift tax.

## III. CONCLUSION

For the reasons stated above, we REVERSE the district court's grant of summary judgment in favor of the taxpayers. We REMAND, however, for further proceedings on the issue of the Commissioner's disallowance of the blockage discount.

FLOYD R. GIBSON, Senior Circuit Judge, dissenting:

I respectfully dissent. I would apply the law as it stood at the time when the taxpayer executed his disclaimer in 1979. This court is not strictly bound to apply *Jewett* in this case because Ordway failed to argue its nonretroactivity. As the majority opinion even admits, courts have excused a party's failure to invoke the correct law where justice so requires.

Here, the interests of justice and fundamental fairness compel this court to judge this case according to the rules that applied when Ordway filed his disclaimer. Particu-

12. The taxpayers lived in Minnesota at the time of the events giving rise to this appeal.

larly in the area of the tax laws, it is important that citizens are provided notice of the laws so that they have a meaningful chance to observe and plan according to them. *See Jewett*, 455 U.S. at 324, 102 S.Ct. at 1093–94 (Blackmun, J., dissenting). In this case, the majority holds that the clock began ticking for Ordway in 1941 when he became aware of his interest, even though *Jewett*, the case that determined when the clock began ticking, was not decided until 1982. Under today's holding Ordway will suffer severe tax consequences for failing to do something at a time when the law provided him with no notice that he needed to act. I do not believe that allegiance to the rules of procedure is a satisfactory justification for producing such a result.

The sort of unfairness that is visited upon Ordway was well described by Justice Blackmun in *Jewett*, where Justice Blackmun dissented from the unfair result imposed on the petitioner in that case. Justice Blackmun stated that expecting Jewett, the contingent remainderman, to disclaim his interest within a reasonable time of the testatrix' death meant that Jewett had to disclaim the interest before he knew its full extent, before he knew whether the interest would ever vest at all, and before he actually obtained any enjoyment out of the interest. Justice Blackmun stated:

> The Court's and the Commissioner's position [in *Jewett*] also seems to me to embrace a distinct element of unfairness. The Commissioner stresses repeatedly the number of years that elapsed between the death of the testatrix and the execution of the disclaimers. This same element has been stressed in others of these cases. But to require the disclaimer long before the interest could ripen into enjoyment means that the decision must be made at a time when the disclaimant does not know what he is disclaiming or whether he ever would receive and enjoy any interest.

*Jewett*, 455 U.S. 305, 328, 102 S.Ct. at 328 (1982) (Blackmun, J., dissenting).

Courts have considerable discretion to excuse, in the interest of justice, a party's failure to raise particular issues. I believe the court should exercise that discretion here in order to avoid this unfairness. I would hold that under *Keinath v. Commissioner of Internal Revenue*, 480 F.2d 57 (8th Cir.1973), Ordway's disclaimer is not subject to the gift tax because it was filed within a reasonable time after the termination of the life estate in June 1979.